# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ELBERT KIRBY, JR., and )
CALEB MATTHEW MEADOWS, )
)
        Plaintiffs, )
)
vs. )   Case No. CIV-14-906-M
)
ERIC WILLIAM ROBERTS, et al., )
)
        Defendants. )

## **ORDER**

This case is scheduled for trial on the Court's April 2016 trial docket.

Before the Court is Defendants Derrick Ware, Steven Kirk, and Billy Fausett's ("Defendants") Motion for Summary Judgment, filed January 6, 2016. On March 11, 2016, Plaintiffs filed their response,[1] and on March 18, 2016, Defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.     Factual Background[2,3]

On February 23, 2014, Oklahoma Highway Patrol Trooper Derrick Ware ("Trooper Ware") was stationed on westbound Turner Turnpike operating a radar. The legal maximum speed is 75

---

[1] In their response, Plaintiffs state they will be scheduling an inspection of the Lincoln County buildings and they reserve the right to supplement their response after the inspection has taken place. Since none of Plaintiffs' claims against Defendants occurred at the Lincoln County buildings, the Court finds no supplement would be warranted and, thus, will decide Defendants' motion based upon the pleadings submitted.

[2] The facts set forth in this factual background are based on Defendants' Statement of Undisputed Facts. In their response, Plaintiffs do not specifically dispute any of the facts.

[3] The events on February 23, 2014 were recorded on the troopers' patrol unit cameras. Additionally, Plaintiffs edited and uploaded to YouTube a video taken by them on February 23, 2014.

miles per hour. Trooper Ware's radar registered a vehicle traveling 89 miles per hour, and the vehicle braked reducing its speed as it passed Trooper Ware's marked patrol unit. Trooper Ware proceeded to stop the vehicle, which was occupied by a driver and a passenger, who were later identified as Plaintiff Caleb Meadows ("Meadows") and Plaintiff Elbert Kirby, Jr. ("Kirby"), respectively. Trooper Ware advised Plaintiffs of the basis for the stop and requested the driver, Meadows, to provide a driver's license and proof of insurance for the vehicle. Meadows did not provide a driver's license or a proof of insurance but provided documentation in apparent support of their apparent belief that they were not subject to complying with state law. Based upon his conversation with Plaintiffs and the documentation provided, Trooper Ware believed he was dealing with sovereign citizen persons who he had been advised could be violent.

Oklahoma Highway Patrol Trooper Billy Fausett ("Trooper Fausett") arrived on the scene approximately 22 minutes into the traffic stop. After Trooper Fausett's arrival on the scene, Trooper Ware again requested Meadows to provide a driver's license and Kirby to cease interfering. Trooper Fausett also attempted to gain compliance with the requests for a driver's license. Plaintiffs were repeatedly advised that the vehicle was stopped for speeding. Throughout the stop Plaintiffs refused to comply with the troopers' requests and were argumentative, repeatedly attempted to assert their sovereign citizen beliefs, including that Meadows was not driving but was "traveling", insisted they would not consent to a search (even though the troopers never asked to search the vehicle), and contested the identity of the troopers despite the fact the troopers were in uniform and driving marked patrol vehicles.

Oklahoma Highway Patrol Trooper Eric Roberts ("Roberts") arrived on the scene approximately 38 minutes into the traffic stop. Lieutenant Steven Kirk ("Lt. Kirk") arrived on the

2

scene approximately 65 minutes into the traffic stop. Lt. Kirk also attempted to gain compliance by making contact with Plaintiffs. Plaintiffs continued to be argumentative and obstructive, questioned Lt. Kirk's identity, and continued to espouse their sovereign citizen beliefs. Lt. Kirk advised Plaintiffs they were going to be placed under arrest, why they were going to be placed under arrest, and that they would be taken out of the vehicle. Trooper Ware briefly drew his service weapon based upon Kirby's placing one hand out of view and re-holstered the weapon after Kirby complied with his commands.

The troopers repeatedly made requests for Plaintiffs to come out of the vehicle. Plaintiffs continued to refuse to comply with the troopers' commands. Trooper Roberts then deployed pepper spray in an effort to get Plaintiffs out of the vehicle. Plaintiffs still continued not to comply with the troopers' repeated requests to unlock the door of the vehicle and continued to refuse to unlock the doors and exit the vehicle even after being warned that the window would be broken to remove them. Once Trooper Ware began striking the vehicle's passenger side window, Plaintiffs agreed to exit the vehicle. Kirby exited first, but Meadows did not immediately exit and pepper spray was again sprayed to obtain Meadows' compliance.

Kirby was barely touched as he was arrested and placed into Trooper Ware's patrol vehicle. After Meadows was removed from the vehicle and placed in handcuffs, he was not subjected to any further use of force. Trooper Ware transported Kirby to the Lincoln County Jail, and Trooper Roberts transported Meadows to the Lincoln County Jail.

On August 25, 2014, Plaintiffs filed the instant action, alleging a number of causes of action. The only remaining causes of action against Defendants are (1) unconstitutional search and seizure/deprivation of liberty (against Trooper Ware), (2) conspiracy to kidnap (against

3

Defendants), (3) assault and battery (against Trooper Ware and Lt. Kirk), (4) attempt to kill with deadly weapon (against Trooper Ware), (5) kidnap (against Trooper Ware), and (6) Oklahoma civil rights violation – excessive force (against Trooper Ware). Defendants now move for summary judgment as to all of Plaintiffs' remaining causes of action.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

    A. <u>Unconstitutional search and seizure/deprivation of liberty causes of action</u>

In these causes of action, Plaintiffs assert that Trooper Ware's initial stop of their vehicle violated their Fourth Amendment rights and that the continued detention and ultimate arrest of Plaintiffs violated their Fourth Amendment rights.

"A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Further,

> [a] traffic stop is valid under the Fourth Amendment when probable cause or reasonable articulable suspicion exists to believe a traffic violation has occurred. The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer involved. The officer's subjective motives for stopping the vehicle are irrelevant to the inquiry. Our sole inquiry is whether this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*United States v. King*, 209 F. App'x 760, 762 (10th Cir. 2006).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, the Court finds Trooper Ware's initial stop of Plaintiffs' vehicle did not violate the Fourth Amendment. Specifically, the Court finds that Trooper Ware had probable cause to make the initial traffic stop for speeding based upon his radar registering that Plaintiffs' vehicle was traveling 89 miles per hour when the speed limit was 75 miles per hour. In their response, Plaintiffs do not dispute that they were traveling 89 miles per hour.

Additionally, the United States Supreme Court has summarized the law regarding the length of detention relating to traffic stops:

> A seizure for a traffic violation justifies a police investigation of that violation. [A] relatively brief encounter, a routine traffic stop is more analogous to a so-called "*Terry* stop" . . . than to a formal arrest. Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission" – to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed. \* \* \*
> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to [the traffic] stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) (internal quotations and citations omitted). Additionally, the Tenth Circuit has held that a law enforcement officer does not violate the Fourth Amendment by requesting a driver's license and vehicle registration, by performing a computer check, and by issuing a citation. *See United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998).

Having carefully reviewed the parties' submissions, and particularly having viewed the videos of the stop, and viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, the Court finds Trooper Ware's continued detention of Plaintiffs did not violate the Fourth Amendment. Specifically, the Court finds that Trooper Ware's detention of Plaintiffs lasted no longer than was necessary to effectuate the purpose of his initial stop

of the vehicle – to address the speeding violation. Further, the Court finds Trooper Ware did not violate the Fourth Amendment by requesting Meadows to produce his driver's license and insurance verification. It was Plaintiffs' repeated refusals to comply with Trooper Ware's request for Meadows' driver's license and insurance verification that caused any prolonged detention of Plaintiffs.

Finally, a law enforcement officer may make a warrantless arrest for a minor traffic violation without offending the Constitution so long as the arrest is based upon probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense [failure to wear seat belt] in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Further,

> [c]onsistent with the Fourth Amendment, an officer may make a warrantless arrest if there is probable cause to believe a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. Further, an officer's subjective motivations for making an arrest are irrelevant in a probable cause inquiry.

*Courtney v. Okla. ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1225-26 (10th Cir. 2013) (internal quotations and citations omitted).

Having carefully reviewed the parties' submissions, and particularly having viewed the videos of the stop, and viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, the Court finds the arrest of Plaintiffs did not violate the Fourth Amendment. Specifically, the Court finds Trooper Ware had probable cause to believe that Meadows was speeding, did not possess a valid driver's license, and was obstructing the troopers

to justify Meadows' arrest. Further, the Court finds that there was probable cause that Kirby's actions, as evidenced in the videos, constituted obstruction under Oklahoma law.

Accordingly, the Court finds that Trooper Ware is entitled to summary judgment as to Plaintiffs' unconstitutional search and seizure/deprivation of liberty causes of action.

B. Kidnap/Conspiracy to kidnap causes of action

These causes of action are based upon Plaintiffs' allegedly unconstitutional detention and arrest. As set forth above, Plaintiffs' detention and arrest do not violate the Fourth Amendment and were constitutional. Accordingly, the Court finds Defendants are entitled to summary judgment as to Plaintiffs' kidnap and conspiracy to kidnap causes of action.

C. Assault and battery, attempt to kill with deadly weapon, and excessive force causes of action

All of these causes of action are based upon the amount of force that was used during the detention and arrest of Plaintiffs.

> Excessive force claims are governed by the Fourth Amendment's "objective reasonableness" standard. Under this standard, the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. In determining whether the use of force is reasonable in a particular situation, we consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to flee.

*Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012).

Having carefully reviewed the parties' submissions, and particularly having viewed the videos of the stop, and viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, the Court finds the force employed by Defendants was clearly justified and in no way could be considered excessive. The Court would first note that

Plaintiffs continually failed to comply with any of the troopers' requests and locked themselves in their vehicle. The Court finds that Trooper Ware's pointing of his service weapon at Kirby was objectively reasonable under the circumstances that existed at the time as known to Ware. Specifically, based upon Plaintiffs' lack of compliance and that they had made statements leading the troopers to believe they were sovereign citizen adherents, the Court finds it was objectively reasonable for Trooper Ware to point his service weapon at Kirby when he moved his hand to an area where it was no longer completely visible to Trooper Ware. The Court would further note that as soon as Kirby's hand was once again visible, Trooper Ware re-holstered his service weapon. Additionally, the Court finds that the use of the pepper spray was objectively reasonable based upon Plaintiffs' lack of compliance, the statements that they had made, that Plaintiffs were locked in their vehicle and refusing to exit their vehicle, and Meadows was not immediately exiting the vehicle when he finally opened his door. Finally, the Court finds that once Plaintiffs exited the vehicle only minimal physical force was used by the troopers in arresting Plaintiffs.

Accordingly, the Court finds that Trooper Ware and Lt. Kirk are entitled to summary judgment as to Plaintiffs' assault and battery, attempt to kill with deadly weapon, and excessive force causes of action.

IV. Conclusion

For the reasons set forth above, the Court GRANTS Defendants' Motion for Summary Judgment [docket no. 129].

**IT IS SO ORDERED this 28th day of March, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE