# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ELBERT KIRBY, JR., and )
CALEB MATTHEW MEADOWS, )
)
      Plaintiffs, )
)
vs. )   Case No. CIV-14-906-M
)
ERIC WILLIAM ROBERTS, et al., )
)
      Defendants. )

## ORDER

This case is scheduled for trial on the Court's April 2016 trial docket.

Before the Court is Defendants Lincoln County Jail, Lincoln County Sheriff's Office, and Lincoln County Sheriff Charlie Dougherty's ("Lincoln County Defendants") Motion for Summary Judgment, filed January 4, 2016. On March 11, 2016, Plaintiffs filed their response,[1] and on March 16, 2016, the Lincoln County Defendants filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.    Factual Background

Detention staff at the Lincoln County Detention Center ("LCDC") are responsible for the booking and release of inmates. The booking process includes receiving relevant information on criminal charges from the arresting officer and then processing the inmate through a series of questions, including the gathering of relevant personal information, as well as conducting a medical questionnaire/review of the inmate. Further, as part of the booking process, all arrestees are

---

[1]In their response, Plaintiffs state they will be scheduling an inspection of the Lincoln County buildings and they reserve the right to supplement their response after the inspection has taken place. In light of the bases for the Court granting the Lincoln County Defendants' motion for summary judgment, the Court finds any evidence from an inspection of the Lincoln County buildings would not alter the Court's ruling on this motion.

searched and are provided jail clothing. Additionally, the Lincoln County District Court has established its own bail schedule for many crimes, and while jail staff is trained that certain offenses are bailable without an appearance before the court, jail staff are required to follow the bond schedule set by the Lincoln County District Court in the setting of any bail on proposed charges.[2]

On the morning of February 23, 2014, around 11:00 a.m., Oklahoma Highway Patrol troopers presented plaintiff Elbert Kirby, Jr. ("Kirby") and plaintiff Caleb Matthew Meadows ("Meadows"), whom they had arrested,[3] to the LCDC for booking and detention. Upon arrival at the LCDC, the arresting officers advised the booking officers of the crimes for which Plaintiffs were being arrested and were being charged. According to the Lincoln County Defendants, upon initially being questioned by the booking officers, both Kirby and Meadows refused to cooperate or answer any questions which related to the booking procedures, and, accordingly, they were placed in a holding cell until they decided to cooperate and the booking process could be completed. In their affidavits provided in support of their response, Plaintiffs dispute that they refused to cooperate or answer any questions.

While awaiting Plaintiffs' cooperation, Plaintiffs were searched, changed into jail attire, and placed into a holding cell. Neither Kirby nor Meadows were provided phone calls until the booking process was completed. According to the Lincoln County Defendants, during the next several hours, staff repeatedly approached the holding cell and asked Plaintiffs if they wanted to talk and finish the

---

[2]The bond set for an arrestee is based on the charges that are proposed by the arresting officer(s).

[3]The factual details of the arrest of Plaintiffs are set forth in this Court's March 28, 2016 Order [docket no. 183] granting the Oklahoma Highway Patrol troopers' motion for summary judgment.

booking process and advised Plaintiffs that the sooner the booking process was completed, the sooner they could contact a bail bondsman to see about securing a bond for release, but Plaintiffs continued to not talk to staff. In their affidavits provided in support of their response, Plaintiffs dispute that the staff continued to attempt to finish the booking process or advised why they could not make a phone call. The Lincoln County Defendants further assert that during this time, Kirby and Meadows were each offered a lunch tray and dinner tray and drink at the appropriate times, which both refused.

Several hours after first being delivered to the LCDC, Detention Officer Daniel Lewis removed Meadows from the holding area to visit with him separately from Kirby, at which time Officer Lewis again advised Meadows of the situation and repeated that the sooner Meadows cooperated, the sooner he could attempt to secure release through bail. Meadows finally consented and booking was completed late that evening, and after he was booked, he was offered the opportunity to make phone calls and then was placed in the male general population unit of the jail with other general population inmates. Once Meadows consented to the booking process, Kirby was advised. He then also agreed to complete the booking process, which was completed around midnight, and after which Kirby was also placed in the male general population unit of the jail with other general population inmates.

Jail staff was advised by the arresting officers that Meadows was arrested on and being charged with, and Meadows was booked on, the crimes of (1) obstructing an officer, (2) speeding, and (3) failure to possess a valid driver's license. Meadows' bond was set at $4,000.[4] Jail staff was

---

[4]Per the court's bond schedule, the bond for obstructing an officer was $4,000; the bond for driving without a license was $1,000, and there was no set bond for speeding. However, per the practice of the jail and instructions from the court, the bonds were not stacked but instead, the jail

advised by the arresting officers that Kirby was arrested on and being charged with, and Kirby was booked on, the crime of obstructing an officer, and his bond was set at $4,000. Both Kirby and Meadows were released in the early morning hours of February 24, 2014, after having a bondsman post a $4,000 bond for each of them.

On August 25, 2014, Plaintiffs filed the instant action, alleging a number of causes of action. The only remaining causes of action against the Lincoln County Defendants are (1) unconstitutional search and seizure/deprivation of liberty, (2) conspiracy to kidnap, (3) excessive bail, (4) conspiracy to interfere with civil rights, (5) false imprisonment/deprivation of liberty, and (6) breach of contract. The Lincoln County Defendants now move for summary judgment as to all of Plaintiffs' remaining causes of action.

II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts.

---

set the bond in the amount of the single highest bond.

Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

    A. Defendants Lincoln County Jail and Lincoln County Sheriff's Office

The Lincoln County Defendants assert that defendants Lincoln County Jail and Lincoln County Sheriff's Office are not legal entities subject to suit. Federal Rule of Civil Procedure 17(b)(3) provides that a defendant's capacity to sue or be sued is determined "by the law of the state where the court is located". Fed. R. Civ. P. 17(b)(3). Therefore, this Court must apply Oklahoma law to determine whether defendants Lincoln County Jail and Lincoln County Sheriff's Office have the capacity to be sued.

> Under Oklahoma law, "any person, corporation, partnership, or unincorporated association [has] capacity to . . . be sued in this state." Okla. Stat. tit. 12, § 2017(B). Applying this law, the Western District of Oklahoma has held that the Oklahoma County Jail and a county sheriff's office lack capacity to be sued.

*West v. Okla. Cty. Jail*, No. CIV-09-528-F, 2009 WL 1751468, at *2 (W.D. Okla. June 18, 2009) (internal citations omitted). Accordingly, the Court finds that defendants Lincoln County Jail and Lincoln County Sheriff's Office lack the capacity to be sued and should be dismissed.

    B. Unconstitutional search and seizure/deprivation of liberty, conspiracy to kidnap, and false imprisonment/deprivation of liberty causes of action

Plaintiffs' unconstitutional search and seizure/deprivation of liberty, conspiracy to kidnap, and false imprisonment/deprivation of liberty causes of action are all based upon Plaintiffs' allegation that the arrest and detention of Plaintiffs was without probable cause and, therefore,

5

unconstitutional. In the Court's March 28, 2016 Order granting the Oklahoma Highway Patrol troopers' motion for summary judgment, the Court found that there was probable cause for the arrest and detention of Plaintiffs and that the arrest and detention of Plaintiffs did not violate the Constitution. *See* March 28, 2016 Order [docket no. 183] at 5-8. Based upon this Court's prior findings, the Court finds that the Lincoln County Defendants are entitled to summary judgment as to Plaintiffs' unconstitutional search and seizure/deprivation of liberty, conspiracy to kidnap, and false imprisonment/deprivation of liberty causes of action.

### C. Remaining § 1983 causes of action

Municipal liability under § 1983 cannot be based upon the doctrine of *respondeat superior* or vicarious liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978). Further, a municipal defendant may not be held liable under § 1983 simply because it "employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty, Okla. v. Brown*, 520 U.S. 397, 403 (1997). "To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal citations omitted). "Ordinarily, [p]roof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." *Id.* at 994 (internal quotations and citation omitted).

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs have not shown that a custom or policy of the Lincoln County Defendants directly caused the alleged constitutional violations. Specifically, the Court finds that Plaintiffs have presented no evidence of any custom or policy that directly caused their alleged constitutional violations. In fact,

the policies and operational guidelines in place for the LCDC that have been submitted by the Lincoln County Defendants are not violative of any relevant standards or constitutional provisions. Additionally, the Lincoln County District Court has established its own bail schedule for many crimes, including those at issue in the instant case, and Plaintiffs' bail was determined based upon this bail schedule. Further, the Court finds that the amount of bail set forth on the bail schedule is not excessive.

Accordingly, the Court finds that the Lincoln County Defendants are entitled to summary judgment as to Plaintiffs' remaining § 1983 causes of action.[5]

### D. Breach of contract cause of action

Finally, Plaintiffs assert a cause of action for breach of contract. Under Oklahoma law, in order to recover on a breach of contract claim, a plaintiff must establish: (1) formation of a contract, (2) breach of the contract, and (3) damages as a direct result of the breach. *See Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Plaintiffs and viewing all reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs have submitted absolutely no evidence showing any formation of a contract between Plaintiffs and the Lincoln County

---

[5] To the extent Plaintiffs are asserting an individual capacity claim against Sheriff Dougherty, the Court finds Sheriff Dougherty is entitled to summary judgment. Plaintiffs have submitted no evidence showing any personal participation on the part of Sheriff Dougherty in the alleged constitutional violation. It is undisputed that Sheriff Dougherty did not personally participate in any decision or action concerning the arrest, jailing, booking, bail or any other aspect of the detention and incarceration of either Meadows or Kirby. Additionally, it is undisputed that Sheriff Dougherty was not aware of the arrest or jailing of Plaintiffs until after both had been released from the custody of the LCDC.

Defendants. Accordingly, the Court finds the Lincoln County Defendants are entitled to summary judgment as to Plaintiffs' breach of contract cause of action.

IV. Conclusion

For the reasons set forth above, the Court GRANTS the Lincoln County Defendants' Motion for Summary Judgment [docket no. 122].

**IT IS SO ORDERED this 31st day of March, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE